JULIA PARMELEE, f/k/a )
JULIA HANDLER, )
                 )
        Plaintiff, )
                 )
    vs. )        Case No. 4:09CV357 CDP
                 )
THE STANDARD FIRE )
INSURANCE COMPANY, )
                 )
        Defendant. )

## MEMORANDUM AND ORDER

Plaintiff and her former husband purchased a homeowner's insurance policy from defendants in 2006. After experiencing marital difficulties, plaintiff moved out of the residence. Under a separation agreement between plaintiff and her former husband, the couple's residence was awarded solely to the husband. On March 5, 2007, a fire caused significant damage to the residence and personal property inside. Although defendant initially issued plaintiff an emergency advance on the policy, defendant made no further payments to plaintiff, but instead, made payments to her former husband and other individuals, including a mortgagee listed in the insurance policy. After discovering these payments, plaintiff filed this breach-of-insurance-contract action against defendant. Defendant now moves for summary judgment on plaintiff's complaint. Because the undisputed evidence

shows that defendant did not breach the policy by issuing these payments, I will grant summary judgment.

## Background

In 2006, plaintiff and her then-husband, Matthew Handler, purchased a homeowner's insurance policy from defendant for their residence at 2814 North Geyer, St. Louis, Missouri 63131. Under this policy, both plaintiff and Matthew were listed as the named insured. The couple separated sometime in 2006, however, and plaintiff later moved out of the residence. On March 5, 2007, a fire caused significant damages to the home and personal property inside. After the fire, an agent for defendant met with Matthew and provided him with an emergency advance check for $10,000. After plaintiff contacted the adjustor, defendant also issued an emergency advance of $10,000 to her. A few days later, defendant paid Matthew an additional $5000 as a personal property settlement advance. Also in March, Matthew directed defendant to pay $3,477.92 to Paragon Restoration for emergency restoration services, and $29,359.20 to Temporary Accommodations for securing temporary housing for Matthew and the couple's children.

In the meantime, plaintiff and Matthew reached and drafted a separation agreement that they filed on April 26, 2007 in family court, and a divorce was awarded that same day. Under the separation agreement, Matthew was awarded the residence and agreed to personally assume all liens and mortgages on it. All

personal property was also distributed. Plaintiff later quit-claimed her title to the residence to Matthew in accordance with the agreement. The agreement did not discuss the homeowner's insurance policy at issue in this case, even though the fire had already occurred.

Matthew submitted a claim for losses under defendant's policy along with portions of the signed and stamped separation agreement. After reviewing his claim, defendant settled Matthew's claimed losses and agreed with him how and to whom loss payments would be made. First, Matthew directed defendant to pay an additional $67,347.95 to Paragon Restoration for their restoration services. Thus, defendant paid a total of $70,825.87 to Paragon. Matthew and defendant's agent next agreed on the actual cash value settlement of the residence, and defendant issued payment to one of the listed mortgagees, Novastar Mortgage, Inc., for $318,490.24. This amount was less than the total amount owed on the mortgage. In March of 2008, defendant made an additional payment to Temporary Accommodations for $2870.11 for housing Matthew and the couple's children, so a total of $32,229.31 was paid to Temporary Accommodations.

Defendant also made loss payments directly to Matthew. In July of 2007, defendant paid Matthew $39,830 for recovery of fifty percent of the residence's value. Next, defendant paid Matthew an additional $25,000 as a personal property settlement advance. In December of 2007, defendant paid Matthew $34,950.78 as

a final settlement of Matthew's personal property losses. These two payments, together with the $15,000 in payments to Matthew in March of 2007, resulted in a total of $74,950.78 being paid to Matthew for his claimed personal property losses.

After plaintiff discovered these payments, she filed this one-count complaint against defendant for breach of contract. Defendant now moves for summary judgment on several grounds. First, defendant asserts that the applicable homeowner's policy contained a facility-of-payments clause under which defendant could make payments to any person legally entitled to receive payment. Defendant contends that it was only required to make payments under this clause in good faith, which it did. Next, defendant contends that the plain meaning of the relevant loss-payment clause required it to make payments to plaintiff unless some other person named in the policy is legally entitled to receive payment, and other persons, including plaintiff's ex-husband, were legally entitled to payment to the exclusion of plaintiff. In response, plaintiff denies that the payment clause was a facility-of-payments clause, and asserts that defendant had no authority under the contract to issue payment to plaintiff's former husband to the exclusion of plaintiff. According to plaintiff, defendant was required to pay plaintiff in addition to her husband under the policy because both were listed as the named insured, and genuine issues of material fact remain as to plaintiff's damages. Plaintiff also moves for leave to file a statement of additional uncontroverted material facts.

## Discussion

The standards for summary judgment are well settled. In determining whether summary judgment should issue, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party, here plaintiff. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Under Missouri law, which applies to this diversity case, the rules governing the interpretation of insurance polices are well settled. *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. 1998) (en banc). Specifically, a court must apply the general rules of contract construction when interpreting an insurance policy, because insurance policies are contracts. *Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. 2007) (en banc). When interpreting a contract,

a court must give the contract's terms their plain and ordinary meaning, unless a term is ambiguous. *Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 508 (Mo. 1997) (en banc); *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 301 (Mo. 1993) (en banc). A term's plain and ordinary meaning is the meaning that an average layperson would give the term. *Farmland Indus., Inc.*, 941 S.W.2d at 508. In addition, a court "should not interpret policy provisions in isolation but rather evaluate policies as a whole." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, No. SC 90085, 2009 WL 3833377, at *2 (Mo. Nov. 17, 2009). Finally, in interpreting an insurance contract, the court must give the policy's provisions a "reasonable meaning," and avoid an interpretation that renders parts of the policy "useless or redundant." *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. Ct. App. 2008).

A term is ambiguous only if the terms are "reasonably and fairly open to different constructions, and there is duplicity, indistinctness, or uncertainty of meaning." *Miller's Classified Ins. Co. v. French*, No. ED 92306, 2009 WL 2151387, at *2 (Mo. Ct. App. July 21, 2009) (citations omitted). When an ambiguity exists in an insurance policy, the court must interpret the policy in favor of the insured. *Todd*, 223 S.W.3d at 160. If, however, the policy is unambiguous, the court must enforce the contract's terms as written. *Id.*

**The Insurance Policy**

Because so many provisions of the insurance policy are at issue, I will describe the policy in detail. Entitled, "**HOMEOWNERS POLICY**," the policy lists "MATTHEW AND JULIA HANDLER" as the "**Named Insured**." The policy also lists Novastar Mortgage Inc. as the first mortgagee, and Pulaski Bank as the second mortgagee. Damages to the dwelling and personal property are covered, as well as costs for additional living expenses and reasonable repairs. Upon the occurrence of a loss, the insureds are required to file a sworn statement of loss, listing the "INTEREST OF THE **INSURED** AND ALL OTHERS IN THE PROERTY INVOLVED AND ALL ENCUMBRANCES ON THE PROPERTY," as well as any "CHANGES IN TITLE OR OCCUPANCY OF THE PROPERTY DURING THE TERM OF THE POLICY." Under the loss-payment clause, defendant promises to pay you, the named insured – Matthew and plaintiff "UNLESS SOME OTHER PERSON NAMED IN THE POLICY IS LEGALLY ENTITLED TO RECEIVE PAYMENT. Loss will be payable 60 days after we receive your proof of loss . . . . " Finally, the policy contains a "Mortgage Clause," providing,"If a mortgagee is named in this policy, any loss payable [for loss of the dwelling or other structures] shall be paid to the mortgagee and [the named insured], as interests appear."

## A. Facility-of-Payment Clauses

Defendant first contends that the loss-payment clause is a facility-of-payment clause, entitling defendant to make loss payments under the policy to anyone legally entitled to receive payment. Plaintiff denies this contention.

Missouri courts recognize the validity of facility-of-payment clauses, which confer on an insurance company "an option as to whom it will make payment." *Motley v. Metropolitan Life Ins. Co.*, 178 S.W.2d 791,794 (Mo. Ct. App. 1944). As long as the company exercises its option in good faith, it is not liable to any one else. *Id.* Typically, these clauses were included in industrial life insurance policies, and the clauses' terms traditionally granted the company the option to make payment either to the named beneficiary or to some other person, such as decedent's heir or other person equitably entitled. *See id.* (clause contained terms "granting to defendant the option to pay . . . either the beneficiary named in the policy, or to the executor, administrator, husband or wife, or any relative by blood of the insured . . . "); *see also Clements v. Folse ex. rel. Clements*, 830 So. 2d 307, 313 (La. App. 1 Cir 2002) (facility of payment clauses "primarily designed to limit the liability of the insurer who, in good faith, pays policy proceeds to claimants apparently 'equitably entitled' to receive them.").

I conclude that the loss-payment clause at issue in this litigation was not a facility-of-payments clause. Unlike the clause in *Motley*, which granted the company the option to pay either the named beneficiary or some other person who, in the company's discretion, is more entitled to receive the policy proceeds, the clause in this case affords the company no such discretion. Instead, the clause at issue here unequivocally requires the defendant to pay the policies proceeds to the named insureds – plaintiff and her former husband – unless some other person named in the policy is legally entitled to receive payment. Because the clause does not grant the defendant discretion in making payments under the policy, I conclude that it is not a facility-of-payments clause. *See Motley*, 178 S.W.2d at 794 ; *see also Clements*, So. 2d at 314 (holding that relevant clause was not a facility-of-payment clause because there was "no discretionary, arbitrary, or unchallenged right in the policy for the insurer to name anyone as a beneficiary who seems 'equitably entitled' to the benefits.").

## Plain and Ordinary Meaning of Terms

Applying the general rules of contract interpretation, defendant next contends that the loss-payment clause required defendant to make payments to persons, including her former husband and Novastar Mortgage Company, to the exclusion of plaintiff. According to defendant, it was required to make these payments to other

persons because they were legally entitled to receive payment, and because plaintiff relinquished her interest in the payments in the separation agreement she signed with Matthew. Plaintiff responds that the phrase, "legally entitled to receive payment," means "prior, judicially enforceable determination of liability and damages," as the phrase is defined in underinsured motorist cases.

Plaintiff refers to clauses in underinsured motor vehicle insurance policies that provide, for example, that the company will pay an insured for damages the insured is "legally entitled to collect" or "legally entitled to recover" from the owner or driver of the underinsured motor vehicle. Typically, underinsured motorist policies provide coverage when an insured motorist suffers injuries because of the tortious conduct of an underinsured motorist. *See, e.g., Amato v. State Farm Mut. Auto. Ins. Co.*, 213 S.W.3d 202, 206 (Mo. Ct. App. 2007). In order to recover under such policies, the insured must first establish that the underinsured motorist was at fault for the collision. *See id.* Underinsured motorist policies enforce this requirement by requiring the insured to show that she is "legally entitled to collect," which Missouri courts have interpreted as requiring the insured to establish a "prior, judicially enforceable" determination that the underinsured motorist was at fault. *See id.*

After reviewing the insurance policy, I conclude that the phrase "legally entitled to receive payment" as it is used in this policy does not mean a "prior, judicially enforceable determination of liability," as plaintiff suggests. The policy at issue is different from underinsured motorist policies. It is a homeowners's insurance policy, which provided the insureds loss coverage for their dwelling, residence premises, and personal property. The right to recover under a homeowner's policy arises from the insured's ownership or legal title to the damaged property or from the risk of pecuniary loss if the property is damaged, not from the tortious conduct of a third party. *Compare JAM Inc. v. Nautilus Ins. Co.*, 128 S.W.3d 879, 887 (Mo. Ct. App. 2004) (to recover under a fire insurance policy, claimant must have an insurable interest in the property, which is such a relation to the property that claimant "will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss from its destruction), *with Amato*, 213 S.W.3d at 206 (to recover under a underinsured motorist policy, there must be a "prior, judicially enforceable determination" of underinsured motorist's fault).

Because the policy at issue is different from underinsured motorist policies, I conclude that the definition courts give to similar phrases in UIM policies does not apply in this case. Accordingly, I must determine the meaning of this phrase by giving the phrase's terms their plain and ordinary meaning, unless the terms are

ambiguous.  *See Rodriguez*, 808 S.W.2d at 382.  I must also consider the meaning of these terms by considering the policy as a whole.  *See Ritchie*, 2009 WL 3833377 at *2.  Defendant made payments to several different individuals, so I will consider each payment in turn to determine whether the payee was legally entitled to receive the payment to the exclusion of plaintiff.

## A.   Payment to Novastar Mortgage

Defendant made a payment of $318,490.24 to Novastar Mortgage, Inc., which was listed as the first mortgagee in the policy.   Defendant also listed Matthew Handler's name on the draft as a payee.  Plaintiff contends that defendant breached the policy by omitting plaintiff's name from this draft.

In addition to providing that payment would be made to the insured "UNLESS SOME OTHER PERSON NAMED IN THE POLICY IS LEGALLY ENTITLED TO RECEIVE PAYMENT," the policy also contained a mortgage clause establishing a mortgagee's right to payment.  Specifically, the mortgage clause states, "If a mortgagee is named in this policy, any loss payable [for the loss of the dwelling or other structures] shall be paid to the mortgagee and you, as interests appear."  Under the same clause, if more than one mortgagee is named, "the order of payment shall be the same as the order or precedence of mortgages."

- 12 -

When the phrase, "as interests appear," is contained in mortgage clauses in homeowner's insurance policies, courts typically interpret the phrase to mean that payment of the loss will be first made to the mortgagee up to the extent of his interest, and that the remaining balance, if any, will be paid to the mortgagor. *See, e.g., Grady v. Utica Mut. Ins. Co.*, 419 N.Y.S.2d 565, 569-70 (N.Y. App. Div. 1979) (holding that the phrase, "as interests appear" means that the insurance company undertakes to pay the mortgagee to the extent of his lien as it existed on the date of the fire); 12 *Couch on Ins.* § 178:53 (3d ed. 2009) (same); *see also St. Louis County Nat'l Bank v. Maryland Cas. Co.*, 564 S.W.2d 920, 929 (Mo. Ct. App. 1978) (when insurance policy lists a mortgagee with an existing lien on the insured property, "upon the occurrence of the loss, the right of the mortgagee to the proceeds is . . . superior to that of the insured to the extent of the outstanding debt").

Here, it is undisputed that on the day of the fire, Novastar had an existing mortgage on the residence for which plaintiff and Matthew Handler still owed payment. Defendant issued payment to Novastar and Matthew Handler for the actual cash value of the dwelling. The actual cash value was agreed to by Matthew Handler and defendant's agent, but it was substantially below the amount owed on the mortgage. Defendant contends, and plaintiff does not dispute, that it  included

Matthew's name on the check to simplify matters, as he was to deliver the check to Novastar. After reviewing the entire policy, including the loss-payment clause and the mortgage clause, I conclude that the policy unambiguously required defendant to make any payments for the loss of the dwelling to Novastar, before any payments could be made to the insureds, including plaintiff. *See St. Louis County Nat'l Bank*, 564 S.W.2d at 929.

First, the loss-payment clause required defendant to make loss payments to the named insured, unless some other person named in the policy was legally entitled to receive payment. Novastar, with its existing mortgage, was legally entitled to payment. *See id.* The mortgage clause provides additional explanation as to whom defendant was to make payment, as it required defendant to make loss payments to "the mortgagee and you, as interests appear." "As interest appear" required defendant to make payment first to Novastar for the value of its lien, and unless that lien was extinguished, neither plaintiff nor Matthew were entitled to this payment. *See id.*; 12 *Couch on Ins.* § 178:53. The actual cash value settlement did not completely extinguish Novastar's interest, so defendant could not make additional payments to plaintiff or Matthew until the mortgage was extinguished. *Cf. St. Louis County Nat'l Bank*, 564 S.W.2d at 927-29 (insurance company required to pay mortgagee its interest in the property despite mortgagor's

competing tax liens, because mortgagee's interest was "independent" of the mortgagor's and not subject to tax liens outstanding against mortgagor). As Novastar's right to these payments was superior to plaintiff's, and the payment did not extinguish the mortgage, defendant did not breach the policy by paying Novastar for the value of the dwelling.

This is true even though Matthew Handler's name was included on the draft, because Novastar's right to the proceeds was also superior to Matthew Handler's right. Defendant did not grant Matthew a right to the funds by including his name on the check, but instead Novastar retained a right superior to Matthew's – and plaintiff's – to the proceeds because of its existing lien[1]. *See id.* Accordingly, defendant did not breach the policy by issuing payment to Novastar and Matthew to the exclusion of plaintiff.

### B. Payments to Matthew Handler

Defendant made several payments to Matthew Handler and to other parties at Matthew's direction. Specifically, defendant paid Matthew Handler $74,950.78 for

---

[1]For the same reasons, plaintiff's assertion that Matthew Handler had no authority to unilaterally authorize these payments is incorrect. Because Novastar's right to the proceeds was superior, its right to the proceeds existed independently of any action by Matthew Handler. *See St. Louis County Nat'l Bank v. Maryland Cas. Co.*, 564 S.W.2d 920, 929 (Mo. Ct. App. 1978). Matthew and defendant's agent agreed to the actual cash value and Matthew delivered the check to Novastar for simplicity's sake, but no action by Matthew could have affected Novastar's right to the proceeds. *See id.*

his lost personal property and $39,830.05 for recovery of fifty percent of the recoverable depreciation of the residence.  Additionally, Matthew Handler directed defendant to make payments totaling $70,825.87 to Paragon Restoration for emergency services rendered, and payments of $32,229.31 to Temporary Accommodations for finding and securing temporary housing for Matthew and the couple's children after the fire.  Matthew submitted claims for these costs because he incurred them, but the drafts were issued solely to Temporary Accommodations and Paragon Restoration, without Matthew Handler's name included, per Matthew's directions.

Plaintiff contends defendant violated the policy by issuing these checks to these parties without including her name, because Matthew Handler had no authority under the contract to unilaterally direct how and to whom losses were to be paid.  She does not dispute that Matthew was awarded the dwelling in their divorce, or that Matthew assumed all liens on the residence property after their divorce.   Nor does she dispute that Matthew incurred the restoration costs and costs of temporary accommodations.  Instead, she claims she was entitled to be included in these payments because she is listed as a named insured in the policy.  Finally, plaintiff contends that some of the damaged personal property was her own, and she should have received payment for it in addition to Matthew.

As previously mentioned, the loss-payment clause provided that payment would be made to you, the named insured – Matthew and Julia Handler, unless "SOME OTHER PERSON NAMED IN THE POLICY IS LEGALLY ENTITLED TO RECEIVE PAYMENT." Defendant does not dispute that plaintiff was a named insured under the policy, so the parties' dispute is essentially over whether Matthew Handler was "legally entitled" to receive these payments or direct to whom they were to be made, to the exclusion of plaintiff. Upon occurrence of a loss, the policy required the named insured to submit an inventory of the lost property and any supporting documentation. Additionally, the insureds were required to provide a signed, sworn statement of loss, which was to include: "(2) INTEREST OF THE **INSURED** AND ALL OTHERS IN THE PROPERTY IN THE PROPERTY INVOLVED AND ALL ENCUMBRANCES ON THE PROPERTY; . . . (4) CHANGES IN TITLE OR OCCUPANCY OF THE PROPERTY DURING THE TERM OF THE POLICY." The policy also provides, "Even if more than one person has an insurable interest in the property covered, WE SHALL NOT BE LIABLE: a. TO THE **INSURED** FOR AN AMOUNT GREATER THAN THE **INSURED'S** INTEREST."

It is undisputed that Matthew and plaintiff both signed a separation agreement that was filed on April 26, 2007 in family court as part of their divorce

proceedings. In this agreement, the couple agreed to "fully and finally settle all property rights, claims and interests between them." First, they agreed that they had "equitably divided the household furnishings and other personal goods that they have agreed are marital property and set apart to each other those items that they have agreed are not marital property. The parties agree that no other household furnishings or other personal goods remain to be divided." Matthew was awarded the residence that had been damaged by fire, and he agreed to assume all debts associated with the residence. As part of his being awarded the home, Matthew also agreed to refinance "any and all mortgages, lines of credit, and any other encumbrances . . . into only his name within twelve (12) months . . . Julia agrees to sign a Quit Claim Deed at the time of the refinance, relinquishing any right, title or interest she may have in said property."

When Matthew submitted his claim for loss, he submitted a copy of portions of the signed separation agreement, including the section providing that the damaged residence and accompanying debt had been awarded solely to him. He also submitted proof of the costs for restoration done to the home, for temporary accommodations, and for loss of personal property. Plaintiff never submitted her own separate claim listing her losses, but she contends that Matthew's claim qualified as a claim submitted on her behalf. I will consider each type of payment

made to Matthew or made at his direction to determine whether defendant breached the policy.

## 1. Payment for Actual Cash Value of Residence

Reading the entire policy, I conclude that defendant did not breach the policy by making payments solely to Matthew for the actual cash value of the home. The loss-payment clause states in clear terms that defendant could make loss payments to someone other than plaintiff if that other person is legally entitled to receive payment. Moreover, the policy section entitled, "Your Duties After Loss," provides that an insured submitting a claim for loss must include a statement of loss setting forth "CHANGES IN TITLE OR OCCUPANCY OF THE PROPERTY DURING THE TERM OF THE POLICY." The policy also provides, "Even if more than one person has an insurable interest in the property covered, WE SHALL NOT BE LIABLE: a. TO THE **INSURED** FOR AN AMOUNT GREATER THAN THE **INSURED'S** INTEREST." Clearly, this language indicates that the policy provided for the case of a change of ownership of the insureds, and required defendant only to pay the insured an amount equal to her interest in the property.

Plaintiff does not dispute that Matthew held legal title and assumed all liens on behalf of plaintiff, thereby extinguishing her personal liability, upon the filing of the separation agreement on April 26, 2007. Instead, she contends that, because she

still had legal title on the date of the fire and was listed as a named insured, she was entitled to payment for the value of the residence property even after she relinquished her title to the property to Matthew. This contention flies in the face of the contract's terms, which anticipate a possible change of title, and a named insured's reduced interest in the property. Although on the date of the fire plaintiff had an insurable interest, she later – and before defendant made any payments for the value of the residence – relinquished all her interest in the property. *See DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 706 (Mo. 1984) (en banc) (wife retained an insurable interest in property after she quit-claimed marital home to husband only because she remained personally liable on mortgage notes secured by the insured property). Under the terms of the policy, defendant was allowed to take notice of changes in title and ownership, and reduce payments to the insureds based on their reduced ownership. Because Matthew held legal title to the home and plaintiff had relinquished all her interest in the home, defendant did not breach the contract by issuing this loss payment solely to Matthew.

## 2. Payments for Matthew's Claimed Losses

Plaintiff contends defendant breached the policy by failing to include her name on drafts issued to Paragon and Temporary Accommodations at Matthew's direction, because Matthew had no right under the contract to unilaterally direct

how these payments should be made.  Plaintiff does not contend that she personally incurred costs for the restoration work or for temporary accommodations.  She also claims some of the personal property for which Matthew received payment was her personal property, and defendant should have made payment to her as well based on Matthew's loss claim.

Plaintiff's argument that she was entitled to these payments arises from her contention that the contract had only one named insured – Matthew and Julia Handler.  According to plaintiff, because the contract lists the named insured as "Matthew and Julia Handler," both plaintiff and Matthew were a single, indivisible named insured.  Under this interpretation, Matthew and plaintiff could only file a joint claim for losses, not separate claims, and defendant could only pay both of them for any losses claimed.  Thus, plaintiff contends that defendant was required to make payments to her as well as Matthew for the losses Matthew claimed.  This interpretation is unreasonable and inconsistent with the terms of the policy.

A court must give each policy provision a "reasonable" meaning when interpreting the policy.  *See Dibben*, 261 S.W.3d at 556.  Plaintiff's interpretation is not reasonable, because it would award her for costs and losses that she admits she never had, merely because she is a listed insured.  In addition, other insurance companies have also issued separate payments to separate claimants under a single

homeowner's insurance policy that lists two spouses as the named insured. *See*

*Russell v. Farmers & Merchs. Ins. Co.*, 834 S.W.2d 209, 21, 215 (Mo. Ct. App.

1992) (after burglary caused losses to separated but still married spouses who were

listed as named insured on homeowner's policy, insurance company issued

payment to husband for his separate claim).

Plaintiff's interpretation is also inconsistent with the terms of the policy.

Although the policy provides that "Matthew and Julia Handler," as the "named

insured" and "you," are entitled to coverage for losses, the policy also provides that

defendant will pay for losses of other persons. First, defendant promises to "cover

personal property owned or used by any **insured** while it is anywhere in the

world." The policy defines "insured" as the named insureds, their relatives, and

"any other person under the age of 21 who is in the care of any person named

above." Defendant also promises to "cover personal property owned by others

while the property is on the part of the **residence premises** occupied by any

**insured**." Additionally, the "Your Duties After Loss" section requires a claimant

under the policy to file, with her claim, a sworn statement setting forth the

"INTEREST OF THE **INSURED** AND ALL OTHERS IN THE PROPERTY

INVOLVED." In requiring the claimant to list the interest of all persons in

receiving payment when the claimant makes a claim for loss, the defendant

anticipates that there might be competing claims for property, and that the named insured might not always have a interest in receiving payment for its loss, because it is not her property.

Thus, reading the policy as a whole in order to give its provisions a reasonable interpretation, I conclude that plaintiff's interpretation is incorrect. Given the fact that the policy provides that defendant will cover losses of various individuals other than plaintiff and Matthew for those individuals' damaged property, it only seems reasonable that the policy allowed for separate claims, and for separate payments based on each individual's loss. This is also consistent with the policy's provision, "Even if more than one person has an insurable interest in the property covered, WE SHALL NOT BE LIABLE: a. TO THE **INSURED** FOR AN AMOUNT GREATER THAN THE **INSURED'S** INTEREST." Under this provision, defendant anticipated that multiple persons other than plaintiff might have an interest in payment, and defendant covented not to pay for more than the insured's interest.

As I mentioned above, plaintiff does not contend that she incurred the losses for restoration work or for temporary accommodations. Thus, she had no interest in receiving payment for them. Contrary to her assertion, Matthew did not submit a claim on her behalf. Instead, and as the policy allowed, he made a separate claim

for his separate losses, including the costs for restoration and accommodations. As he was the insured entitled to payment for these costs, he was entitled to direct how payment should be made for them. Accordingly, defendant did not breach the policy by issuing payment directly to Paragon and to Temporary Accommodations.

Finally, defendant did not breach the contract by issuing payment to Matthew for his claimed lost personal property. With his claim for these losses, Matthew included a portion of the filed and signed separation agreement stating that plaintiff and Matthew "have divided all marital property." It is undisputed that, when Matthew submitted his claim for lost personal property, he and plaintiff had already filed their separation agreement. Accordingly, defendant did not breach the policy by issuing payment solely to Matthew upon his filing his claim for lost personal property along with portions of his separation agreement showing all marital property had been divided. Because Matthew and plaintiff had already filed their separation agreement when Matthew submitted his claims, if plaintiff had losses for personal property as she now asserts, she was required to make a separate claim under the policy for her lost property, just as Matthew did. The policy provided for separate claims for separate property losses, and plaintiff is charged with knowing the policy's contents, as she signed it. *See Repair Masters Const., Inc. v. Gary*, 277 S.W.3d 854, 858 (Mo. Ct. App. 2009) ("A party capable of reading and

understanding a [contract] is charged with the knowledge of its contents if he or she signs it, even if the party fails to review it."). Accordingly, these payments did not violate the policy.

Because plaintiff cannot show that defendant breached the policy by making any of the payments it made to Novastar Mortgage, Matthew, or other companies at his direction, summary judgment must issue to defendant.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#16] is granted, and plaintiff's claim is dismissed. A separate Judgment will be entered this same day in accordance with this Memorandum and Opinion.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave [#23] to file a statement of additional uncontroverted material facts is granted.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 11th day of February, 2010.